## A89A1190. OAMI v. DELK INTERCHANGE, LTD.
### (388 SE2d 706)

BEASLEY, Judge.

Plaintiff Delk Interchange, Ltd., entered into a five-year lease of premises in a shopping center with defendant, Chaim Oami, commencing May 1, 1985. The minimum monthly rent during the first year was $1,250. It was to increase annually. In the event of default, the lease provided in part: "Any installment of rent or any other charge or money obligation herein required to be paid by Tenant which is not paid when due shall bear interest at the rate of eighteen (18%) percent per annum or at the maximum rate allowed by law, whichever is less, from the due date until paid and the Landlord may treat any such charge or money obligation as additional rent hereunder. Tenant shall, in addition, pay a service charge of $10.00 per day and Landlord may treat such charge as additional rent hereunder."

Beginning in January 1986, defendant repeatedly paid the rent late. Accumulated late interest charges and service fees were added on defendant's account. Between January and August 1986, defendant voluntarily paid the late charges and service fees on at least two occasions. The late payments continued, however, and on June 11, 1987, plaintiff filed a proceeding against tenant holding over seeking "(a) possession of the premises; (b) past due rent of $5,438.64; (c) rent accruing to the date of judgment or vacancy at the rate of $1,570 per month; (d) late charges and service charges of $12.65 per day."

Defendant answered and made a partial payment of $1,490 for the June rent. Defendant stipulated that the receipt of that amount by plaintiff did not prejudice plaintiff's right to insist upon a writ of possession. Defendant was ordered to pay the monthly rental payments as they became due.

After discovery, plaintiff moved for summary judgment, which was granted in the amount of $4,093.64. Essentially, this sum represented late interest charges and service charges in accordance with the default provision.

Defendant asserts, inter alia, that the trial court erred in granting summary judgment because a question of fact remains as to whether the late interest charges and service charges constitute a penalty.

After examining the record and the law, we hold that the damages provided for in advance by the parties to this ordinary commercial lease, in the event the tenant did not pay the rent when due, are liquidated and as a matter of law not a penalty.

According to this standard lease for the shopping center premises, the determinable amount specified in the article on "Defaults and Remedies" would be incurred whenever the tenant defaulted in its promises to meet any monetary obligation when due. The lease set out the graduated rent per square foot for each of the five years, in a

special stipulation.

The provision at issue contemplated that if the tenant stayed in possession without paying rent on time, it could cure the default by paying the additional, easily calculated amount set by the predetermined formula. The landlord would be entitled to a fixed interest return on the rent not had in hand for its cash flow when due, with a daily surcharge to service the default and its consequences. The surcharge of $10 per day would amount to about $300 per month on the $1,250 to $1,578 per month lease.

Thus both landlord and tenant agreed in advance about the monetary consequences of late payments. For the tenant it was regarded as a cost of doing business, as is illustrated by its paying the additional rent without dispute on at least two occasions.

When a contract is breached, "[d]amages are given as compensation for the injury sustained. . . ." OCGA § 13-6-1. Parties to a contract, recognizing that a breach might occur because the contract relates at least in part to future events, may agree in advance what they will consider the damages to be, so as to avoid a lengthy and costly dispute about them should a breach occur and additionally to let each party know how much a breach will cost. So, since " ' "[c]ompetent parties are free to agree to whatever provisions in lawful contracts that they may choose . . . [i]f the parties agree what the damages for breach shall be, the damages are liquidated, and unless the agreement violates some principle of law, the parties are bound thereby. [OCGA §§ 13-6-1; 13-6-7.]" ' [Cits.]" *Gibson v. Sheriff*, 155 Ga. App. 578 (271 SE2d 710) (1980). See also *Fortune &c. Co. v. Dept. of Transp.*, 242 Ga. 531, 533 (250 SE2d 401) (1978), for a similar articulation of the rule.

"In deciding whether a contract provision is enforceable as liquidated damages, the court makes a tripartite inquiry to determine if the following factors are present: 'First, the injury caused by the breach must be difficult or impossible of accurate estimation; second, the parties must intend to provide for damages rather than for a penalty; and third, the sum stipulated must be a reasonable pre-estimate of the probable loss.' [Cits.]" *Southeastern Land Fund v. Real Estate World*, 237 Ga. 227, 230 (227 SE2d 340) (1976).

It is the burden of the defaulting party, here the defendant tenant, to show that the liquidated provision is a penalty. *Liberty Life Ins. Co. v. Hartley Constr. Co.*, 258 Ga. 808 (375 SE2d 222) (1989). The plaintiff-landlord, as the movant for summary judgment, has shown that there is no question of material fact which must be resolved and could be resolved in defendant's favor before the court decides the enforceability of the contract provision as a matter of law, as is its duty. *Liberty Life*, supra at 809.

Because of the nature of the contract and the relationship of the

parties and the non-receipt of funds on time in a market of fluctuating interest rates over a five-year period, the injury to landlord which would be caused by late payments would be difficult or impossible of accurate estimation. Second, it is evident from the provision itself, and from the fact that the parties abided by it in the past, that the parties intended at the time of contracting to provide for damages rather than for a penalty. Third, the certain amount, which was adjusted to the length of tardiness, was a reasonable pre-estimate of the probable loss. Merely charging the legal rate of interest for the forced loan would not compensate the landlord-"lender" for the costs associated with its borrowing operating funds at the then-market rate.

The landlord has met the three-part test set out in *Southeastern Land Fund*, supra, and applied in *Liberty Life*, supra. The commendable effort of the parties to avoid a lawsuit by negotiating in advance what a particular type of default by the tenant will cost it, should be encouraged. The landlord relinquished in advance its right to prove potentially greater damages, and the tenant gained the benefit of knowing in advance the price of this specific default. The trial court correctly granted summary judgment to the landlord.

*Judgment affirmed. Carley, C. J., Deen, P. J., Birdsong and Pope, JJ., concur. McMurray, P. J., Banke, P. J., Sognier and Benham, JJ., dissent.*

McMurray, Presiding Judge, dissenting.

I cannot agree that the damages provided in the lease agreement are liquidated and not a penalty as a matter of law. Accordingly, I dissent.

"In deciding whether a contract provision is enforceable as liquidated damages, the court makes a tripartite inquiry to determine if the following factors are present: 'First, the injury caused by the breach must be difficult or impossible of accurate estimation; second, the parties must intend to provide for damages rather than for a penalty; and third, the sum stipulated must be a reasonable pre-estimate of the probable loss.' [Cits.]" *Southeastern Land Fund v. Real Estate World*, 237 Ga. 227, 230 (227 SE2d 340). In making this inquiry, we must keep in mind that "in cases of doubt the courts favor the construction which holds the stipulated sum to be a penalty, and limits the recovery to the amount of damage actually shown, rather than a liquidation of the damages." *Mayor &c. of Brunswick v. Aetna Indem. Co.*, 4 Ga. App. 722, 728 (62 SE 475).

"[W]hether a provision represents liquidated damages or a penalty does not depend upon the label the parties place on the payment but rather depends on the effect it was intended to have and whether it was reasonable. [Cit.] Where the parties do not undertake to estimate damages in advance of the breach . . . the amount, even though

called liquidated damages, is instead an unenforceable penalty. [Cit.]" *Southeastern Land Fund v. Real Estate World*, 237 Ga. 227, 228, supra.

An examination of the record in the case sub judice demonstrates a failure on the part of plaintiff to establish the late interest charges and service charges as a reasonable pre-estimate of the loss. Asked how plaintiff arrived at the $10 per day service charge, plaintiff's agent simply deposed that that amount was "printed on the form." Thus, it would appear that the service charge was to bear no real connection to the actual loss incurred by plaintiff in the event defendant failed to pay the monthly rent timely.

Concerning the intention of the parties, plaintiff's agent averred that the service charge "provides a penalty for a tenant who is consistently a slow payer." Although the agent also deposed otherwise, this averment must be construed against plaintiff in weighing its motion for summary judgment. *Prophecy Corp. v. Charles Rossignol, Inc.*, 256 Ga. 27 (343 SE2d 680). At the very least, it demonstrates the existence of a genuine issue of material fact regarding the parties' intention.

Besides, I think the lease agreement itself casts doubt upon the intention of the parties. Unlike *Krupp Realty Co. v. Joel*, 168 Ga. App. 480 (309 SE2d 641), in which the lease agreement contained a flat monthly charge for the failure to timely pay the rent, the lease agreement in the case sub judice contains a service charge which accrues daily, in addition to interest charges. Given this, I am inclined to view the lease agreement as imposing a penalty rather than as providing liquidated damages. As it is said: "In determining whether a designated sum that is to be paid to one party in the event that the other breaches the contract is a penalty, we must ascertain whether it was inserted for the purpose of deterring the party from breaching his contract, and of penalizing him in the event he should do so, or whether it was a sum which the parties in good faith agreed upon as representing those damages which would ensue if the contract should be breached. *If A borrows $100 from B, agreeing that if he does not repay it by October 1, he will pay $1 per day as liquidated damages for the detention thereof, this is plainly a penalty, an attempt to coerce prompt performance of the contract*, rather than an attempt to estimate what the legal damage to B will be; for the law fixes the legal damages in such a case at the lawful rate of interest." (Emphasis supplied.) *Florence Wagon Works v. Salmon*, 8 Ga. App. 197, 199 (68 SE 866).

I am authorized to state that Judge Sognier and Judge Benham join in this dissent.

644

SOGNIER, Judge, dissenting.

I concur fully and specially with Presiding Judge McMurray's dissent. The monthly rental is $1,250. If this amount is 30 days late, at the rate of $10 per day, $300 will accrue. This is a service charge of 24 percent per month or 288 percent per year, all in addition to the 18 percent per annum interest charge on late payments. I find it difficult to decide on summary judgment that this is a proper liquidated damage rather than a penalty.

I am authorized to state that Presiding Judge Banke and Judge Benham join in this dissent.

DECIDED NOVEMBER 1, 1989 —
REHEARING DENIED NOVEMBER 22, 1989 — 

*Aiken & Ward, Lewis E. Hassett, Annette K. McBrayer,* for appellant.

*Silfen, Segal, Mills & Fryer, Keith E. Fryer,* for appellee.